IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**FILED**

DEC 12 2017

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 17-335 |
| | ) | (18 U.S.C. § 1349) |
| DEVAN ABRAMS | ) | (UNDER SEAL) |
| TAMARA FELDMAN | ) | |
|   a/k/a Tamara Petrova | ) | |
| AZAD KHIZGILOV | ) | |
| ROMAN SHAULOV | ) | |

## INDICTMENT

### COUNT ONE

The grand jury charges:

1. From a date uncertain in 2013, and continuing thereafter to in and around February 2017, in the Western District of Pennsylvania and elsewhere, the defendants, DEVAN ABRAMS, TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, ROMAN SHAULOV, and other individuals and entities known and unknown to the grand jury, engaged in a conspiracy to violate the following laws of the United States:

   a. Mail Fraud, in violation of 18 U.S.C. § 1341;

   b. Wire Fraud, in violation of 18 U.S.C. § 1343; and

   c. Bank Fraud, in violation of 18 U.S.C. § 1344(2).

### INTRODUCTION

At all material times:

2. There were various entities involved in the processing of credit card payments, including credit card issuers, credit card acquirers or processors, companies that operated credit card networks, and companies that operated gateways (collectively "Credit Card Companies") that had policies that precluded the use of their products and services for on-line pharmacies, the sale

of products in violation of trademark laws, on-line gambling, and various other illegal or high-risk activities (collectively "Precluded Activity" or "Precluded Activities").

3. The Credit Card Companies had internal controls that checked compliance with their policies in an effort to insure that their products and services were not used for Precluded Activities, including checking web sites.

4. The defendants, DEVAN ABRAMS, TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, and ROMAN SHAULOV, were associated with various entities that processed credit card payments for Precluded Activities.

## MANNER AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that conspirators, including the defendants, DEVAN ABRAMS, TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, and ROMAN SHAULOV, subverted and caused the subversion of the policies of the Credit Card Companies and caused the Credit Card Companies to provide services and money, through a series of misrepresentations designed to conceal from the Credit Card Companies the processing of credit card transactions for Precluded Activities by making it appear as though the credit card transactions were for goods and services that the Credit Card Companies' policies would permit (collectively "Permitted Activity" or "Permitted Activities").

6. It was further a part of the conspiracy that the defendant, DEVAN ABRAMS, recruited overseas companies involved in Precluded Activities that sought services related to the processing of credit card transactions related to consumers in the United States, including in the Western District of Pennsylvania, for Precluded Activities.

7. It was further a part of the conspiracy that the defendant, ROMAN SHAULOV, allowed companies with which he was associated, and which were involved in Permitted

Activities, to process credit card payments for Precluded Activities as if they were Permitted Activities, and he received compensation for this service.

8. It was further part of the conspiracy that members of the conspiracy, including the defendant, AZAD KHIZGILOV, recruited individuals in whose names members of the conspiracy established and caused the establishment of shell corporations known and unknown to the grand jury that were not truly involved in any business.

9. It was further part of the conspiracy that members of the conspiracy, including the defendant, DEVAN ABRAMS, established and caused the establishment of internet web sites associated with the shell corporations that advertised a Permitted Activity or Permitted Activities.

10. It was further a part of the conspiracy that members of the conspiracy established and caused the establishment of bank accounts through federally insured financial institutions in the names of the shell corporations.

11. It was further a part of the conspiracy that members of the conspiracy, including the defendant, TAMARA FELDMAN, a/k/a Tamara Petrova, applied and caused the submission of applications for merchant accounts from Credit Card Companies falsely claiming that the shell corporations would process payments for Permitted Activities through the associated web sites.

12. It was further a part of the conspiracy that members of the conspiracy, when sales of Precluded Activities were made through the merchant accounts, caused the company names associated with the sales to the shell corporations to appear on the credit card statements of the consumers, rather than the actual entities selling the products, to conceal the true nature of the transactions and the business involved.

13. It was further a part of the conspiracy that members of the conspiracy caused the credit card statements provided to the consumers to include telephone numbers related to the sale for inquiries by customers.

14. It was further a part of the conspiracy that members of the conspiracy established and caused the establishment of telephone banks that the customers called for inquiries, and members of the conspiracy, including the defendant, TAMARA FELDMAN, a/k/a Tamara Petrova, explained to the customers the true nature of the transactions, namely Precluded Activities, with the intent of stopping the customers from seeking refunds for the purchases or otherwise reporting the activity to the Credit Card Companies.

15. It was further a part of the conspiracy that members of the conspiracy, if the sales were successfully processed, received payments from the Credit Card Companies that were deposited into the bank accounts associated with the shell corporations, but controlled by members of the conspiracy.

16. It was further a part of the conspiracy that members of the conspiracy caused payments received through the conspiracy to be paid to the organizations and individuals associated with the fraudulent credit card processing and to the entities associated with the Precluded Activities.

17. It was further a part of the conspiracy that members of the conspiracy used the interstate wires to, among other things, communicate among themselves, with the Credit Card Companies, and with consumers, and to make and receive payments.

18. It was further a part of the conspiracy that members of the conspiracy used the United States mail and interstate commercial carriers to, among other things, send the products purchased through the methodology described above.

19. It was further a part of the conspiracy that many of the Credit Card Companies were federally insured financial institutions or wholly owned subsidiaries of federally insured financial institutions.

20. It was further a part of the conspiracy that much of the money ultimately involved in the fraudulent transactions flowed through accounts of federally insured financial institutions.

All in violation of Title 18, United States Code, Section 1349.

A True Bill,

_____
Foreperson

_____
SOO C. SONG
Acting United States Attorney
DC ID No. 457268

5